# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMANDA OFFLEY, JAMIE DUMELLE, LUCY MASSA, and KERRY HINES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FASHION NOVA, LLC,<br><br>Defendant. | Case No. 1:22-cv-10603-IT<br><br>Hon. Indira Talwani<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Amanda Offley, Jamie Dumelle, Lucy Massa, and Kerry Hines (collectively, "Plaintiffs"), by their undersigned attorneys, bring this class action complaint against Fashion Nova, LLC ("Defendant" or "Fashion Nova"). Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon information and belief as to all other matters.

## <u>NATURE OF ACTION</u>

1.     This is an action regarding Defendant's intentional suppression of hundreds of thousands of 1-star, 2-star, and 3-star consumer reviews (alternatively, the "Lower-Starred Reviews") from its online website to artificially inflate the value of its products.

2.     When shopping online, consumers heavily rely on reviews from fellow shoppers. In fact, ninety-three percent (93%) of adults in the United States read reviews before making online purchases.[1]

---

[1] https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews.

3.      Fashion Nova, an almost exclusively online retailer,[2] has made millions of dollars selling clothing, apparel, accessories, and more (collectively, the "Products") on its website, fashionnova.com.

4.      Taking advantage of the fact that prospective consumers rely on fellow consumers' reviews prior to making an online purchase, Defendant intentionally suppressed Lower-Starred Reviews for all Products on its website.

5.      Specifically, the Federal Trade Commission found that "[f]rom as early as late 2015 through mid-November 2019, Fashion Nova chose to have four- and five-star reviews automatically post to the website but did not approve or publish *hundreds of thousands lower-starred, more negative reviews.*"[3]

6.      Had Defendant not engaged in these deceptive and unfair practices, the average ratings, and inherent value to prospective consumers, of Defendant's Products would have been lower.  Moreover, the written reviews would have provided more information to prospective consumers, including concerns over the quality of the Products, prior to deciding whether to purchase said Products.  As a result, had Defendant not suppressed the Lower-Starred Reviews, Plaintiffs and other consumers would not have purchased a number of Products, or would have paid substantially less for the Products, because the Products would have been rated poorly and deterred Plaintiffs and other consumers from making purchases.

---

[2] Fashion Nova has approximately five brick-and-mortar stores, however, generates a significant amount of its sales from its online website. https://www.fashionnova.com/pages/locations

[3] https://www.ftc.gov/news-events/news/press-releases/2022/01/fashion-nova-will-pay-42-million-part-settlement-ftc-allegations-it-blocked-negative-reviews (emphasis added).

7.      Plaintiffs assert claims on behalf of themselves and similarly situated purchasers of Defendant's Products for violations of the consumer protections laws of Massachusetts, Florida, Pennsylvania, and New Jersey.

## THE PARTIES

8.      Plaintiff Amanda Offley is a resident of Brockton, Massachusetts and has an intent to remain there, and is therefore a domiciliary of Massachusetts.  While in Massachusetts, Ms. Offley purchased multiple pairs of swimsuits and shorts from Defendant's website in May 2018. Ms. Offley reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. Offley would not have purchased the Products or would have paid substantially less for them.

9.      Plaintiff Jamie Dumelle is a resident of Lauderhill, Florida and has an intent to remain there, and is therefore a domiciliary of Florida.  While in Florida, Ms. Dumelle purchased multiple dresses from Defendant's website in November 2018.  Ms. Dumelle reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. Dumelle would not have purchased the Products or would have paid substantially less for them.

10.     Plaintiff Lucy Massa is a resident of Philadelphia, Pennsylvania and has an intent to remain there, and is therefore a domiciliary of Pennsylvania.  While in Pennsylvania, Ms. Massa purchased a dress from Defendant's website in October 2018.  Ms. Massa reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Product.  Had Defendant not suppressed the Lower-Starred Reviews of the Product, Ms. Massa would not have purchased the Products or would have paid substantially less for them.

11.    Plaintiff Kerry Hines is a resident of Clifton, New Jersey and has an intent to remain there, and is therefore a domiciliary of New Jersey.  While in New Jersey, Ms. Hines purchased multiple shirts, dresses, jeans, and skirts from Defendant's website in February 2018, September 2018, October 2018, and November 2018.  Ms. Hines reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. Hines would not have purchased the Products or would have paid substantially less for them.

12.    Plaintiffs are reasonable consumers and are not required to scrutinize consumer reviews to ferret out misleading facts and omissions (nor could they) and cannot ascertain facts that are in Defendant's exclusive control.  Defendant had exclusive control over consumer reviews published on its website, and its practice to deliberately suppress Lower-Starred Reviews from its websites.

13.    Defendant Fashion Nova, LLC is a limited liability company formed under the laws of California with its headquarters at 2801 E. 46th Street, Vernon, California 90058.  Defendant owns and manages a primarily online retail business that generates approximately $500 million in revenue per year.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A). There are more than 100 Class Members, the aggregate claims of all members of the proposed Class exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different than Defendant.

15.    Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its

principal place of business [California] and the State under whose laws it is organized [California]." *See* 28 U.S.C. § 1332(d)(10).

16.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this District such that it has sufficient minimum contacts with this District. Defendant also agreed to waive all arguments concerning personal jurisdiction over the non-Massachusetts plaintiffs and their individual claims, but otherwise reserves all other rights, defenses, and arguments.  ECF No. 16.

17.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.  Defendant also agreed to waive all arguments concerning venue as to the non-Massachusetts plaintiffs and their individual claims, but otherwise reserves all other rights, defenses, and arguments.  ECF No. 16.

## FACTUAL BACKGROUND

18.     When shopping online, consumers heavily rely on reviews made by fellow shoppers.  In fact, ninety-three percent (93%) of adults in the United States read reviews before making online purchases.[4]

19.     This statistic makes sense.  When consumers purchase products online, they are not able to see the product for themselves and are unlikely to trust what a company will say regarding the quality of its own product.

20.     As a result, consumers want to see what fellow consumers, who have already made the purchase, have to say.  However, not only do consumers want to hear what others who have already made the purchase have to say, consumers also trust and are influenced by others in their

---

[4] https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews

position, as roughly "90% of consumers say that positive online reviews influence their buying decisions."[5]

21.     One popular form of consumer reviews is leaving a star-rating of the product, ranging from one-star to five-star, with an attached comment explaining why the consumer left such a rating.  Five stars means that, on average, past purchasers thought that the product was very good.  One star means that, on average, past purchasers though that the product was very bad.



22.     Consumers rely on these reviews, and the aggregate average star rating of the product just as much as any other type of consumer review.  In fact, consumers generally will not even consider a product unless it has a minimum average star-rating of 3.4 stars.[6]



---

[5] https://medium.com/@BBBNWP/the-power-of-reviews-and-how-consumers-rely-on-them-to-make-purchases-51fcbcebd376

[6] https://www.podium.com/state-of-online-reviews/

23.     In other words, products with too many lower-star reviews are products that future consumers will not want to purchase or will not pay as much for.

24.     Defendant, taking advantage of all this information, enacted unfair and deceptive provisions on its online website regarding consumer reviews of its Products.

25.     Specifically, Defendant, through a third-party interface, suppressed any and all Lower-Starred Reviews on all Products on its online website from 2015 to 2019.

26.     By intentionally suppressing the Lower-Starred Reviews, Defendant achieved two important goals.  *First*, Defendant was able to artificially inflate the average star rating for each Product on its website, thus making each Product look more attractive to all prospective consumers.

27.     With only four-star and five-star reviews remaining on each Product, the lowest average star-rating for any Product on Defendant's website could not be lower than a 4.0 average star-rating, well above the 3.4 average minimum consumers look for when considering a purchase.

28.     Thus, Defendant's conduct directly led to a false average star rating for all Products on its website.



29.     Importantly, this also meant that Defendant inflated the value of each Product, and therefore the price of each Product, in which reviews were suppressed.

30.     *Second*, Defendant's conduct omitted any consumer warnings and/or concerns with the Products, information that other consumers should have been given access to prior and would have utilized to determine whether to purchase Products on Defendant's website.

31.     The following are lower-starred consumer reviews on Defendant's website in the past two years—since Defendant ceased suppressing Lower-Starred Reviews on its website—addressing the size, fit, and quality, or lack thereof, of Defendant's Products:



32.     These are just some examples of the types of information that from 2015 to 2019 were not available for consumers to review prior to purchasing a Product on Defendant's website.

33.     In sum, from 2015 to 2019, consumers relied on Defendant's representations that the Products were highly rated by fellow consumers and did not have any issues.

34.     Consumers during that time period had no way of knowing that Defendant was suppressing Lower-Starred Reviews, and were instead left to think that the Products were simply highly rated and of high-quality.

35.     In January 2022, the Federal Trade Commission ("FTC") found that Defendant had been suppressing lower-starred consumer reviews throughout its website from 2015 to 2019.[7]

36.     Specifically, the FTC found that Defendant "installed a third-party online product review management interface.  The interface allow[ed] users to choose to have certain reviews automatically post based upon their star ratings and hold lower-starred reviews for client approval prior to posting."[8]

37.     Importantly, "[f]rom as early as late 2015 through mid-November 2019, Fashion Nova chose to have four- and five-star reviews automatically post to the website but did not approve or publish *hundreds of thousands lower-starred, more negative reviews.*"[9]

38.     Defendant's representations of the Products during the above time period were materially misleading in that they were likely to deceive a reasonable consumer of other purchasers' true feelings and experiences with the Products, which were more negative than was otherwise advertised.

39.     As a direct and proximate result of Defendant's misrepresentations, material omissions, and deceptive practices in its website, Plaintiffs and others similarly situated consumers have suffered actual injuries from their purchase of one or more of the Products because Plaintiffs

---

[7] https://www.ftc.gov/system/files/documents/cases/192_3138_fashion_nova_complaint.pdf.

[8] *Id.*

[9] *Id.* (emphasis added).

and other consumers would not have purchased the Products, or would have paid significantly less for them, had Defendant not suppressed the Lower-Starred Reviews.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff Amanda Offley seeks to represent a class defined as all Massachusetts domiciliaries who purchased an item from Fashion Nova's website while in Massachusetts from April 1, 2018 through and including December 25, 2018 (the "Massachusetts Class").

41.     Plaintiff Jamie Dumelle seeks to represent a class defined as all Florida domiciliaries who purchased an item from Fashion Nova's website while in Florida from March 23, 2018 through and including December 25, 2018 (the "Florida Class").

42.     Plaintiff Lucy Massa seeks to represent a class defined as all Pennsylvania domiciliaries who purchased an item from Fashion Nova's website while in Pennsylvania from March 23, 2016 through and including December 25, 2018 (the "Pennsylvania Class").

43.     Plaintiff Kerry Hines seeks to represent a class defined as all New Jersey domiciliaries who purchased an item from Fashion Nova's website while in New Jersey from March 23, 2016 through and including December 25, 2018 (the "New Jersey Class").

44.     The Massachusetts Class, the Florida Class, the Pennsylvania Class, and the New Jersey Class shall be collectively referred to as the "Class."

45.     Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

46.     Plaintiffs reserve the right to modify or expand the definition of the Class to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

47.     Members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class Members and their identities are unknown to Plaintiffs at this time but will be determined through discovery of Defendant's records.  Class Members may be notified of the pendency of this action by mail, email, and/or publication.

48.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.   These common legal and factual questions include, but are not limited to:

  (a)     whether the online reviews for Fashion Nova items on its website included false and/or misleading statements and/or omissions;

  (b)     whether Defendant's conduct violated the Massachusetts Consumer Protection Law;

  (c)     whether Defendant's conduct violated the Florida Deceptive and Unfair Trade Practices Act;

  (d)     whether Defendant's conduct violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

  (e)     Whether Defendant's conduct violated the New Jersey Consumer Fraud Act; and

  (f)     the nature of Plaintiffs and the Class's damages.

49.     Plaintiffs' claims are typical of the claims of the proposed Class they seek to represent because Plaintiffs, like all members of the Class, purchased the Products from

Defendant's website during the relevant class periods without knowing that Lower-Starred Reviews were being suppressed by Defendant.  The representative Plaintiffs, like all members of the Class, have been damaged by Defendant's misconduct in the very same way as the members of the Class.  Further, the factual bases of Defendant's misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

50.     Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

51.     A class action is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of a defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation of Massachusetts' Consumer Protection Law,**
**Mass. Gen. Laws Ch. 93A, §§ 1, *et seq.***

52.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

53.     Plaintiff Offley brings this claim against Defendant, individually and on behalf of the Massachusetts Class.

54.     This claim is brought under the laws of Massachusetts.

55.     Defendant is a "person" as defined by the Mass. Gen. Laws ch. 93A § 1(a).

56.     Plaintiff Offley and members of the Massachusetts Class are actual consumers of the Products.

57.     Defendant engaged in deceptive or unfair acts or practices in the conduct of any trade or commerce, in violation of the Massachusetts Consumer Protection Law ("MCPL"), Mass. Gen. Laws ch. 93A, §§1, *et seq.*, by using a third-party interface to deliberately suppress lower-starred reviews of its Products in order to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase Products consumers would not have purchased or pay more for Products than consumers otherwise would have.  Mass. Gen. Laws ch. 93A §2(a).

58.     Defendant's deceptive trade practices significantly impacted the public because there are millions of consumers of the Products, including Plaintiff Offley and members of the Massachusetts Class.

59.     Defendant's representations and omissions were material because a reasonable consumer would consider the Products' reviews and review scores important in deciding whether to buy Defendant's Products.

60.     Defendant's deceptive trade practices caused injury in fact and actual damages to Plaintiff Offley and members of the Massachusetts Class.  The injuries to Plaintiff Offley and Massachusetts Class Members were to legally protected interests.  The gravity of the harm of Defendant's actions is significant and there is no corresponding benefit to consumers of such conduct.

61.     For each loss, Plaintiff Offley and each member of the Massachusetts Class may recover an award of actual damages or twenty-five dollars, whichever is greater.  Mass. Gen. Laws ch. 93A § 9(3).

62.     Because Defendant acted willfully or knowingly, Plaintiff Offley and each member of the Massachusetts Class may recover up to three but not less than two times this amount.  In addition, Plaintiff Offley may recover attorneys' fees and costs.

63.     In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiff Offley's counsel served Defendant with written notice of its violation of Mass. Gen. Laws ch. 93A and a demand for relief on March 21, 2022.  Defendant did not make a written tender of settlement or otherwise respond to the demand for relief.  A copy of this letter is attached hereto as **Exhibit 1.**

### COUNT II
### Violation of the Florida Unfair and Deceptive Practices Act,
### Fla. Sta. §§ 501.201, *et seq.*

64.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

65.     Plaintiff Dumelle brings this claim against Defendant, individually and on behalf of the Florida Class.

66.     This claim is brought under the laws of Florida.

67.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

68.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

69.     FDUPTA can be violated in two ways, both of which are relevant to this case.  *First*, Defendant has committed a "traditional" violation of FDUPTA by engaging in unfair and/or deceptive acts and practices which caused injury to Plaintiff Dumelle and members of the Florida Class.

70.     *Second*, Defendant has committed a *per se* violation of FDUPTA predicated on a violation of the FTC Act.  Specifically, "unfair or deceptive acts of practices in or affecting commerce … are … declared unlawful" pursuant to 14 U.S.C. § 45(a)(1), and Defendant has therefore violated FDUPTA.  Fla. Stat. Ann. § 501.203(3)(c) (explaining that a FDUPTA violation may be based on "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.").

71.     While FDUPTA does not define "deceptive" or "unfair," Florida courts have looked to the Federal Trade Commission's interpretations for guidance.  "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (internal quotation marks and citation omitted).  Courts define a "deceptive trade practice" as any act or practice that has the

tendency or capacity to deceive consumers. *Fed. Trade Comm'n v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016). Courts define an "unfair trade practice" as any act or practice that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).

72.    Defendant engaged in conduct that was likely to deceive members of the public. This conduct includes using a third-party interface to deliberately suppress lower-starred reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase Products consumers would not have purchased or pay more for Products than consumers otherwise would have.

73.    As alleged herein, Plaintiff Dumelle and members of the Florida Class have suffered injury in fact and lost money as a result of Defendant's conduct because they purchased Defendant's Products in reliance on Defendant's artificially inflated reviews and incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

74.    Thus, Plaintiff Dumelle and members of the Florida Subclass have been "aggrieved" (*i.e.*, lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

75.    As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff Dumelle and the Florida Class to damages and relief under FDUPTA.

76.    By committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices, which constitute unfair competition within the meaning of FDUTPA.

77.     Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's own Product reviews, which it directly controls, consumers could not have reasonably avoided such injury.

78.     Accordingly, Defendant is liable to Plaintiff Dumelle and the Florida Class for damages in amounts to be proven at trial, including attorneys' fees and costs.

**COUNT III**
**Violation of the Pennsylvania Unfair Trade**
**Practices and Consumer Protection Law,**
**73 Pa. Cons. Stat. §§ 201-1, *et seq.***

79.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

80.     Plaintiff Massa brings this claim against Defendant, individually and on behalf of the Pennsylvania Class.

81.     This claim is brought under the laws of Pennsylvania.

82.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-1, *et seq.*, defines "unfair methods of competition" and "unfair or deceptive acts or practices" to mean any one or more of the following acts and declares such acts to be unlawful under § 201-2(3):

(a)     Advertising goods or services with intent not to sell them as advertised (§ 201-2(4)(ix));

(b)     Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions (§ 201-2(4)(xi));

(c)     Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)).

83.     Defendant's advertising, marketing, and sale of its Products to Plaintiff Massa and the proposed Pennsylvania Class constituted "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

84.     Defendant violated the UTPCPL by engaging in the above conduct proscribed under 73 Pa. Cons. Stat. § 201-2(3) in transactions with Plaintiff Massa and the proposed Pennsylvania Class which were intended to result in, and did result in, the sale of its Products. Specifically, Defendant used a third-party interface to deliberately suppress Lower-Starred Reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase Products consumers would not have purchased or pay more for Products than consumers otherwise would have.

85.     Plaintiff Massa and members of the Pennsylvania Class suffered injury in fact and lost money as a result of Defendant's conduct because they purchased Defendant's Products in reliance on Defendant's artificially-inflated reviews and incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had Defendant not suppressed the Lower-Starred Reviews.

86.     On behalf of herself and the Pennsylvania Class, Plaintiff Massa requests that this Court order Defendant to restore the money to Plaintiff Massa and all proposed Pennsylvania Class members that was acquired as a result of Defendant's unfair and deceptive practices. 73 Pa. Cons. Stat. § 201-4.1.

87.     On behalf of herself and the Pennsylvania Class, Plaintiff Massa seeks actual damages or $100, whichever is greater, treble damages based on Defendant's egregious and systematic misconduct, and an award of costs and reasonable attorneys' fees.  73 Pa. Cons. Stat. § 201-9.2.

**COUNT IV**
**Violation of New Jersey Consumer Fraud Act,**
**N.J. Stat. §§ 56:8-1, *et seq.***

88.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

89.     Plaintiff Hines brings this claim against Defendant, individually and on behalf of the New Jersey Class.

90.     This claim is brought under the laws of New Jersey.

91.     Plaintiff Hines and New Jersey Class members have suffered an injury in fact and lost money or property as a result of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. §§ 56:8-1, *et seq*.

92.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise."  N.J. Stat. § 56:8-2.

93.     Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Products in the course of Defendant's business.  Specifically, Defendant used a third-party interface to deliberately suppress Lower-Starred Reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase

Products consumers would not have purchased or pay more for Products than consumers otherwise would have.

94.     Had Defendant not engaged in these misleading, deceptive, and false practices, Plaintiff Hines and members of the New Jersey Class would not have purchased the Products on the same terms and would have paid substantially less for the Products.

95.     The existence of Lower-Starred Reviews would have been material to Plaintiff Hines and members of the New Jersey Class.

96.     Plaintiff Hines and members of the New Jersey Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff Hines and members of the New Jersey Class would not have purchased the Products on the same terms had they known the truth about the Products.  Specifically, Plaintiff Hines and members of the New Jersey Class were damaged by the difference in value of the Products as represented without the Lower-Starred Reviews versus the value of the Products had the Lower-Starred Reviews not been suppressed, in an amount to be determined through expert testimony and at trial.

97.     Pursuant to N.J. Stat. § 56:8-19, Plaintiff Hines and members of the New Jersey Class seek an order awarding damages and any other just and proper relief available under the NJCFA.

98.     In accordance with N.J. Stat. § 56:8-20, a copy of this complaint will be sent to the New Jersey Attorney General within ten (10) days of filing the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representative of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the members of the Class;

(b)   For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)   For prejudgment interest on all amounts awarded;

(f)   For an order of restitution and all other forms of equitable monetary relief;

(g)   For an order requiring Defendant to undertake a corrective advertising campaign;

(h)   For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(i)   Granting such other and further relief as may be just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues so triable.

Dated: June 30, 2022                    Respectfully submitted,

**REARDON SCANLON LLP**

By: _/s/ James J. Reardon, Jr._
       James J. Reardon, Jr.

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242

Email:  james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller (*Pro Hac Vice* forthcoming)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: rmiller@bursor.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2022, a true and correct copy of the forgoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_/s/ James J. Reardon, Jr._
James J. Reardon, Jr.